WIGGINTON, Chief Judge.
Plaintiff wife has appealed from a final decree which awarded her a divorce from her husband, custody of and support for their minor child and alimony for herself. By this appeal the wife contends that the chancellor committed reversible error in sustaining the husband’s exceptions to those portions of the Special Master’s report relating to alimony and the payment of certain medical expenses incurred by the wife during the pendency of the suit.
We shall first deal with that point on appeal relating to the question of alimony. The principle is settled in this state that the amount of alimony to be awarded a wife in a divorce proceeding shall be determined and controlled by the necessities of the wife and the financial ability of the *917 husband to meet those necessities.[1] The Special Master found from the evidence adduced before him that the wife’s needs and those of the child amount to the sum of $475 a month. He further found that the wife was employed and earned a gross salary of $275 a month, or $250 a month after deductions. By his report the Master recommended that the husband be required to pay the wife $100 a month for child support and $175 a month as alimony. Adding the wife’s net earnings to the two items recommended by the Master to be paid by the husband results in a total income to the wife of $525 a month, or $50 in excess of the wife’s proven needs as found by the Master. Since the wife took no exception to the Master’s finding with respect to her actual needs she is in no position to complain on appeal that the finding was inadequate or incorrect. If we accept such finding as correct, it is obvious that the Master’s recommendation with respect to the amount of alimony to be paid by the husband is not supported by the evidence and was vulnerable to the exception filed thereto by the husband. Under these circumstances it then became the right and duty of the chancellor to provide that alimony be paid to the wife in such amount, at such times and by such methods as will adequately meet the established needs of the wife and at the same time be within the financial ability of the husband to pay.
With respect to the husband’s financial ability to meet the proven needs of his wife and child, the chancellor found that the husband’s income is so sporadic and uncertain that he is not in position to comply with the recommendations of the Special Master which would require him to pay to his wife a regular even-flowing sum of $175 during each and every month as alimony, in addition to the sum of $100 a month for child support. The chancellor therefore found that the Master’s recommendation with regard to the amount of .alimony to be paid the wife, and the time when such payments should be made, is not supported by any substantial or competent evidence in the record and was clearly erroneous.
The foregoing conclusion of the chancellor is based upon the following facts revealed by the- evidence and found by the Master. Defendant husband is a young professional golfer who enjoyed remarkable success in the year 1958, but whose income can reasonably be expected to vary considerably in the future depending upon his luck and ability on the golf circuit, his continued good health and availability for draft into military service. The husband’s business expenses are extremely high and amount on an average to approximately $18,000 a year. Such expenses are in line with other successful touring golf professionals whose occupations require extensive traveling to expensive resort areas and compel one engaged in the profession to remain constantly in the public eye. Unless the husband has funds available to compete in the nationally known golf tournaments his gross income will drop sharply. His gross income for the year 1958 was $20,000, which together with insurance and other monies totaled approximately $25,000. His expenses and other obligations during the first four months of 1959 exceeded the income which he earned as prize money in the tournaments in which he participated. The major tournaments which give promise of substantial earnings are held during the first and last quarter of each year. During the remaining two quarters of the year the income derived by a professional golfer from tournament winnings is normally low.
By his decree the chancellor accepted and approved the Special Master’s recommendation that defendant husband be required to pay to his wife as alimony a sum equivalent to $175 per month or $2,100 annually. However, in view of the husband’s complete dependence for a livelihood upon the element of luck, continued good health, as *918 well as his skill, the chancellor was unwilling to require that the alimony to be paid by him be in equal and even-flowing amounts on the first day of each month. Instead, the chancellor devised a formula under which the defendant is required to pay to the wife $100 a month for child support as recommended by the Master, together with the sum of $50 a month as alimony. The decree further provides that since these two items, together with the husband’s normal expenses of operation amount to approximately $20,000 a year, the husband is required to file with the court at the end of each calendar quarter a statement of his total earnings during the preceding quarterly period. The decree provides that if the husband’s quarterly earnings exceed the sum of $5,000 (this being one-fourth of his annual fixed obligations as mentioned above), then he is required to pay to his wife in a lump sum one-fifth of all income received by him during such quarter above the fixed sum of $5,000. Such payments out of excess earnings shall be made each quarter until the wife has received the full $2,100 a year alimony as recommended by the Special Master. The husband must look to the remaining excess earnings for the payment of income taxes, extraordinary expenses and the accumulation of an estate. It is obvious from the decree appealed that if the husband’s gross earnings do not exceed $5,000 during any quarterly period of the calendar year, then his obligation to pay alimony to his wife is limited to the sum of only $50 a month as otherwise provided for in the decree. By the same token, his inability to earn in excess of the stipulated amount in any quarterly period will conclusively demonstrate his financial inability to meet the needs of his former wife.
Appellant contends that the proof adduced before the Master is susceptible of the inference that the husband possesses the ability to pay to his wife as alimony the sum of $175 each month. From this premise appellant reasons that the court erred in sustaining the husband’s exception to the Master’s report as regards the payment of alimony under the rule adopted by the Supreme Court in Harmon.[2] In Harmon it was held that a chancellor may override or modify a finding or recommendation of its Special Master only for good cause. The phrase “good cause” was interpreted to. mean a showing that the findings of fact or the recommendations of the Master were-clearly erroneous.
From the undisputed facts we are forced to conclude that the chancellor was correct in holding that there is no competent or substantial evidence in the record which will support the Master’s conclusion that the husband possesses the financial ability to pay his wife the sum of $175 each month as alimony. The earning ability of a professional golfer is precarious at best. It; depends to such a large extent upon the element of luck, as well as skill and ability, that one cannot say with certainty which, months of the year he will realize winnings from his tournament play and which, months his winnings will fail to equal his. actual expenses. Whether he wins first, second, fifth or tenth prize money in any given tournament, or finishes out of contention, could be affected by an otherwise perfect shot being deflected by such unforeseen contingencies as a sudden gust of' wind, a twig from a tree suddenly blown onto the fairway, or an unusually soft spot in the green. The liability of a professional golfer to serve a jail sentence for contempt of court in failing to meet alimony requirements should not depend upon such vicissitudes. While the bad breaks, of the game may be offset by an equal number of good breaks during the course of a year, there is no assurance whatever-they will average themselves out during-any calendar month so that losses in one tournament may be overcome by winnings, in the next. We are of the view that taking all facts into consideration the formula. *919 adopted by the chancellor which is embodied in his final decree regarding alimony requirements to be met by the husband is supported by competent evidence and constitutes a more reasonable solution of the problem with which the court is required to deal in this case. It is our view that under the rule in Harmon the chancellor did not abuse his discretion nor exceed his authority in arranging the payments of alimony to be made by the husband in such way as will as nearly as possible meet the established needs of the wife and child and at the same time be within the financial ability of the husband to pay.
We have carefully considered the appellant’s remaining assignments of error, as well as the cross assignments of error filed by appellee, but fail to find that either of them contains substantial merit. The decree appealed is accordingly affirmed.
Affirmed.
STURGIS and CARROLL, DONALD, JJ., concur.

. Platt v. Platt, Fla.App.1958, 103 So.2d 253.

. Harmon v. Harmon, Fla.1949, 40 So.2d 209.